IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATHERINE J. BOLTON,<br><br>Plaintiff,<br><br>vs.<br><br>LORETTA LYNCH, Attorney General of the United States,<br><br>Defendant. | No.: 2:15–CV–294–DWM<br><br>ORDER |

## INTRODUCTION

Defendant Loretta Lynch, in her capacity as Attorney General of the United States of America (the "Agency"), moves to dismiss Plaintiff Katherine Jill Bolton's claims that relate to the Agency's decision to suspend her eligibility for access to Top Secret National Security Information. (Doc. 20.) Bolton filed suit against the Agency under Title VII of the Civil Rights Act of 1964, alleging that the Agency subjected her to disparate treatment and retaliated against her on the basis of her gender. (Doc. 1.) A hearing was held on the motion on July 27, 2016. (Doc. 29.) For the reasons stated on the record and below, the motion is granted.

## BACKGROUND

In October 2002, Bolton began her employment with the United States

Department of Justice as an Assistant United States Attorney in the United States Attorney's Office for the Eastern District of Washington. (Doc. 1 at ¶ 4.1.) All Assistant United States Attorneys are required to maintain eligibility for access to Top Secret National Security Information. (Doc. 20-1 at 2, Attach. 1.) Bolton was promoted to the supervisory position of Deputy Criminal Chief in April 2012. (Doc. 1 at ¶ 4.13.) She alleges she became "the target of a pattern and array of disparate treatment from male subordinates," which was "encouraged and ratified" by her male supervisors, and that she was subjected to a variety of "management actions" that amounted to less favorable treatment on the basis of her gender. (*Id.* at ¶¶ 4.18, 4.19, 4.26.) She alleges the pattern of less favorable treatment included disparity of compensation. (*Id.* at ¶ 4.24.) After inquiring into pay discrepancies in her office, Bolton filed a Freedom of Information Act request in June 2011. (*Id.* at ¶¶ 4.31, 4.34.) In February 2014, Bolton filed an Equal Employment Opportunity complaint of discrimination. (*Id.* at ¶ 2.2; Doc. 23-1.) Bolton received a response to her FOIA request in May 2014, which she alleges "failed to disclose the information needed to assess comparisons." (*Id.* at ¶ 4.36.)

In July 2014, Bolton obtained a disc containing compensation information as well as the personnel records of thousands of current and former United States Attorney's Office employees. (Docs. 1 at ¶¶ 4.39, 4.42.1; 20-3 at 1.) When

questioned by management, Bolton stated that the disc had been provided to her anonymously and that she had not copied or shared the information on the disc. (Docs. 20-1, Attach. 4; 20-3 at 2.) Management directed her to return the disc and refrain from copying or sharing the information. (Doc. 20-1, Attach. 3.) It later became known that Bolton had obtained the disc with the assistance of an IT Specialist and that she copied and shared the information on the disc. (Docs. 20-1, Attachs. 6, 7; 20-3.)

United States Attorney Michael Ormsby placed Bolton and the IT Specialist on paid administrative leave on July 31, 2014, and reported the "security breach" to the Executive Office for United States Attorneys. (Docs. 1 at ¶ 4.42.4; 20-1, Attach. 9; 20-5; 20-6.) Subsequent requests by the Executive Office to extend Bolton's paid administrative leave were granted by officials at the Department of Justice. (Docs. 20-6, 20-7, 20-8.) On September 22, 2014, the Office of the Inspector General informed the Executive Office that it determined it would "open an investigation into this matter." (Doc. 20-1, Attach. 8.)

On October 10, 2014, the Department of Justice's Department Security Officer suspended Bolton's eligibility for access to Top Secret National Security Information based on notification from the United States Attorney's Office that Bolton had requested, obtained, viewed, copied, and shared the information on the

disc and that she had not been fully forthcoming about her possession of the unauthorized information. (Docs. 1 at ¶ 4.42.7; 20-1, Attach. 9.) On October 17, 2014, Ormsby notified Bolton that he was proposing her indefinite suspension without pay, charging her with both "Failure to Maintain Eligibility for Access to Top Secret National Security Information" and "Reasonable Cause to Believe [She] Committed a Crime for Which a Term of Imprisonment May Be Imposed," specifically four criminal offenses related to falsifying material facts, exceeding authorized access to computers, concealing records, and violating the Privacy Act. (Docs. 1 at ¶ 4.42.8; 20-1 at 4.) Bolton exercised her right to respond to the proposed action, but on November 20, 2014, the Executive Office upheld both charges. (Doc. 20-2.) Bolton was indefinitely suspended without pay until her security clearance was restored and until the Office of the Inspector General's investigation or any other internal investigation or administrative action was concluded. (*Id.*) The Office of the Inspector General recently concluded its investigation in March 2016 and "substantiated the allegations against" Bolton that she requested unauthorized personnel information, violated orders to refrain from copying and sharing the information, and lacked candor when she claimed that the disc was anonymously provided to her and denied copying and disseminating the information. (Docs. 20-3; 24-1.) Prosecution was declined, and

all criminal and administrative actions within the jurisdiction of the Office of the Inspector General are now complete. (Doc. 24-1.)

Bolton resigned on October 15, 2015, before the investigation of the Office of the Inspector General was completed and before a final decision was made as to her security status. (Doc. 1 at ¶ 4.50.) She filed this action six days later. She alleges that she suffered retaliation for reporting and opposing discrimination when she was placed on administrative leave and forced to resign. (*Id.* at ¶¶ 4.50, 5.5.) Bolton alleges that Ormsby "initiated aggressive discipline" against her, commenced an investigation through the Executive Office, involved the Department of Justice and the Office of the Inspector General, and "ensured" that her security clearance was suspended. (*Id.* at ¶¶ 4.42, 4.42.5, 4.42.6, 4.42.7.) She claims that this level of discipline was "unprecedented" and "substantially disparate from that discipline handed out to male employees and male AUSAs who committed 'data security breaches.'" (*Id.* at ¶ 4.43.1.)

**STANDARD**

The Agency moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. According to Bolton, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Title VII, 42 U.S.C. §

2000e-5(f)(1), and she opposes the motion under the Rule 12(b)(6) standard. The approach taken by Bolton aligns with that of the D.C. Circuit, which has held in cases addressing the review of security clearance determinations that motions to dismiss are properly brought under Rule 12(b)(6) because the security clearance issue is not "jurisdictional." *Oryszak v. Sullivan*, 576 F.3d 522, 524–26 (D.C. Cir. 2009). Under that approach, the Agency's motion would have to be treated as one for summary judgment because the parties have presented matters outside the pleadings, Fed. R. Civ. P. 12(d), none of which are "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice," *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Ninth Circuit, however, has consistently treated motions that question judicial review of security clearance determinations as jurisdictional challenges. *See Zeinali v. Raytheon*, 636 F.3d 544, 546 (9th Cir. 2011); *Brazil v. Dep't of Navy*, 66 F.3d 193, 195 (9th Cir. 1995); *Dorfmont v. Brown*, 913 F.2d 1399, 1400–01 (9th Cir. 1990). For that reason, the Agency's motion will be reviewed under the Rule 12(b)(1) standard.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on

their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Bolton alleges that the Agency subjected her to disparate discipline and retaliation because of her gender and her inquiries into pay discrepancies. The Agency's jurisdictional attack is therefore factual because the Agency claims Bolton was disciplined because her security clearance was suspended, which is an action that is judicially unreviewable. *See Drazich v. Mabus*, 2014 WL 2069474, at *3 (N.D. Cal. May 16, 2014) (concluding defendant mounted factual attack based on judicial review of security clearance determination).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* "The court need not presume the truthfulness of the plaintiff's allegations. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter

jurisdiction." *Id.* (internal citation and quotation marks omitted).[1]

## ANALYSIS

The Agency asserts that Bolton's claims of disparate discipline and retaliation must be dismissed because the Court cannot review them purusant to *Department of the Navy v. Egan*, 484 U.S. 518 (1988). In *Egan*, the Supreme Court held that the Merit Systems Protection Board lacked authority to review the Navy's decision to deny an individual a security clearance. 484 U.S. at 520. Recognizing that a security clearance decision is a "sensitive and inherently discretionary" determination entrusted by law to the Executive, the Court concluded "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence." *Id.* at 529. In *Dorfmont*, the Ninth Circuit extended *Egan* to preclude judicial review of

[1] Motions to dismiss for lack of subject matter jurisdiction must be treated as motions for summary judgment when "the jurisdictional issue and substantive issues in [the] case are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Safe Air for Everyone*, 373 F.3d at 1040. But the instant motion need not be treated as one for summary judgment because the jurisdictional challenge (judicially unreviewable security clearance determination) does not arise under the statute that provides the basis for the cause of action (Title VII) and is therefore not intertwined with the merits. *See id.* at 1039 (intertwined where claim was brought under Resource Conservation and Recovery Act and jurisdictional challenge questioned whether grass residue is "solid waste" within the meaning of the Act). *See also Clark v. Tarrant Cnty.*, 798 F.2d 736, 741–42 (5th Cir. 1986) (intertwined where claim was brought under Title VII and jurisdictional challenge questioned whether the plaintiffs were "employees" within the meaning of the statute).

security clearance determinations, concluding that federal courts "have no more business reviewing the merits of a decision to grant or revoke a security clearance than does the [Merit Systems Protection Board]." 913 F.2d at 1401.

In *Brazil*, the Ninth Circuit applied *Egan* and *Dorfmont* in the context of a Title VII discrimination claim. 66 F.3d at 196. There the court instructed that analysis under Title VII advances according to the three-step process set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), where first, the plaintiff must plead a prima facie case of disparate treatment, then the burden shifts to the defendant to provide legitimate, nondiscriminatory reasons for its actions, and finally, the burden shifts back to the plaintiff to establish that the defendant's proffered reasons were in fact pretextual. *Id.* at 196. Under this framework, the court would be required to determine whether the defendant's proffered reasons for its security-related actions were legitimate, yet review of the merits of the defendant's reasons is precisely the type of review that *Egan* forbids. *Id.* at 197. For that reason, the court concluded that Title VII discrimination claims related to security clearance determinations are judicially unreviewable under *Egan*. *Id.*

In light of *Egan* and its progeny, the Agency's evidentiary submissions here establish that the Court lacks authority to review Bolton's disparate discipline and retaliation claims. The Agency submits copies of the correspondence between

Bolton and management concerning the disc, letters granting extensions of her paid administrative leave, and notices of her security clearance suspension and indefinite suspension without pay from her position. (Docs. 20-1; 20-2; 20-6; 20-7; 20-8.) These documents show that Bolton's actions with relation to the disc resulted in her placement on paid administrative leave, the referral of the security breach to the Executive Office, and ultimately the suspension of her security clearance. The documents also show that the clearance was a requirement of her position and that she was indefinitely suspended without pay from her position because her clearance was suspended. Thus, in order to review Bolton's disparate discipline and retaliation claims under the *McDonnell Douglas Corp.* framework, the Court would have to determine whether the security clearance determination was invalid. *Egan*, however, precludes judicial review of the propriety of the security clearance determination.

Bolton has not satisfied her burden of establishing the existence of jurisdiction over her disparate discipline and retaliation claims. She asserts that she does not challenge the merits of the security clearance determination and instead challenges the disciplinary actions of Ormsby, specifically the fact that he referred the security breach to the Executive Office when he did not make similar referrals in the past with regards to breaches involving male employees.

"[F]ederal courts [do] have jurisdiction over employment discrimination claims in which the plaintiff does not dispute the merits of the government's security clearance decision." *Zeinali*, 636 F.3d at 555 (claim judicially reviewable where the plaintiff disputed whether security clearance was a bona fide requirement of the position). But regardless of how Bolton now wishes to characterize her disparate discipline and retaliation claims, they plainly arise out of the merits of the actions the Agency took in response to the security breach, which are a part of the security clearance determination. (Doc. 1 at ¶¶ 4.42, 4.42.2, 4.42.4, 4.42.5, 4.42.6, 4.42.7, 4.42.8, 4.42.14, 4.43, 4.46, 4.50.) All events surrounding the security clearance determination—from the investigation and referral of the security breach to the resulting indefinite suspension without pay—are judicially unreviewable. *See Hill v. White*, 321 F.3d 1334, 1336 (11th Cir. 2003) (initiation of disciplinary proceedings unreviewable); *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996) (initiation of investigation unreviewable); *Perez v. FBI*, 71 F.3d 513, 514 (5th Cir. 1995) (revocation of security clearance and resulting termination unreviewable); *Panoke v. U.S. Army Military Police Brigade*, 307 Fed. Appx. 54 (9th Cir. 2009) (unpublished) ("A review of the circumstances surrounding a security clearance is tantamount to a review of the security clearance itself."). The referral of the security breach and all actions after that

point are unreviewable because it would be impossible for the Court to establish whether the Agency's proffered reasons for its actions were legitimate without evaluating their merits. *Brazil*, 66 F.3d at 197 ("In short, the merit of such decisions simply cannot be wholly divorced from a determination of whether they are legitimate or pretextual.").

Bolton insists that aside from the security clearance-related actions, Ormsby retaliated against her when he charged her with reasonable cause to believe she committed four crimes in his proposal for her indefinite suspension. Those charges, however, played no part in the Department of Justice's decision to suspend her security clearance. (Doc. 20-1, Attach. 9.) Although her indefinite suspension was based in part on those charges, the security clearance charge was sufficient alone to sustain her suspension. (Doc. 20-1 at 4.) Ormsby's allegations do not render Bolton's disparate discipline and retaliation claims judicially reviewable.

Bolton also argues that her claims come under an exception to the *Egan* bar recognized in the D.C. Circuit. In *Rattigan v. Holder*, the plaintiff, an FBI employee, brought a Title VII claim asserting he was discriminated and retaliated against based on his race and national origin. 689 F.3d 764, 765 (D.C. Cir. 2012). Rattigan's coworker voiced security-related concerns about him to the Office of

International Operations, which then referred the matter to the FBI's Security Division. *Id.* at 765–66. After an investigation, the Security Division concluded that the allegations were "unfounded," and Rattigan retained his security clearance. *Id.* at 766. Rattigan claimed that the coworker's complaint and its referral were not protected under *Egan*, and the court agreed, holding that "*Egan*'s absolute bar on judicial review covers only security clearance-related decisions made by trained Security Division personnel and does not preclude all review of decisions by other [agency] employees who merely report security concerns." *Id.* at 768. Recognizing, however, that such an exception creates "a risk that could chill reporting and thus undermine the ability of the Security Division to fulfill its responsibilities to make fully informed security-clearance decisions," the court limited the exception so that "Rattigan's Title VII claim may proceed only if he can show that agency employees acted with a retaliatory or discriminatory motive in reporting or referring information that they knew to be false." *Id.* at 771. After reviewing testimony of the coworkers, the court concluded that there may be evidence to support a claim that they chose to report information they knew to be false. *Id.* at 772–73.

According to Bolton, Ormsby acted with retaliatory and discriminatory motive when he knowingly made a false report to the Executive Office about the

disc-related security breach. The record evidence, however, does not support her misleading representation of the referral. The Office of the Inspector General completed its investigation of the security breach and "substantiated the allegations against [Bolton]" that she requested unauthorized personnel information, violated orders to refrain from copying and sharing the information, and lacked candor when she claimed that the disc was anonymously provided to her and denied copying and disseminating the information. (Docs. 20-3; 24-1.) These are the same allegations that formed the basis of Bolton's extended placement on paid administrative leave, suspended security clearance, and indefinite suspension. The record, therefore, does not suggest that Ormsby's report was false. Bolton relies on the fact that prosecution of her was declined by an independent prosecutor and that the Office of the Inspector General did not report that her behavior was criminal. Yet, neither of those occurrences show that Ormsby's report of the security breach to the Executive Office was *false*. Additionally, Bolton highlights that her security clearance was never revoked, but she resigned before a final security-related determination was made. Accordingly, Bolton's disparate discipline and retaliation claims are judicially unreviewable under *Egan*, and they are not subject to the *Rattigan* exception.

Bolton requests leave to amend as an alternative to dismissal. Her request is

denied. At this stage of the case, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Bolton proposes adding the "knowingly false" standard to her allegations, but such amendments would be an exercise in futility. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). The evidentiary record does not suggest that Ormsby's report to the Executive Office was knowingly false, Bolton did not satisfy her burden of submitting evidence that supports her assertions, and re-labeling the claims would not save them.

Accordingly, IT IS ORDERED that the Agency's Motion to Dismiss (Doc. 20) is GRANTED. Bolton's disparate discipline claim under Count 1 and her retaliation claim under Count 2 that arise out of the circumstances surrounding and the actions taken by the Agency in response to the disc-related security breach are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction, without leave to amend.

IT IS FURTHER ORDERED that Bolton's Motion to Strike (Doc. 25) is DENIED for the reasons stated on the record.

DATED this 1st day of August, 2016.

Donald W. Molloy, District Judge
United States District Court