\

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATHERINE J. BOLTON, | No.: 2:15–CV–294–DWM |
| Plaintiff, | |
| vs. | ORDER |
| LORETTA LYNCH, Attorney General of the United States, | |
| Defendant. | |

Pending before the Court are Plaintiff Katherine Jill Bolton's ("Bolton")

Motion to Stay Trial Proceedings, (Doc. 41),  Motion to Continue Hearings and

Response Deadlines and Request for Shortened Time, (Doc. 47), and Motion for

Rule 54(b) Order of Finality, (Doc. 53).  Also pending is Defendant Loretta

Lynch's ("Lynch") Motion to Dismiss, (Doc. 43).  A hearing was held on the

motions on September 27, 2016.  For the reasons stated on the record and those

provided below, the motions are denied.

## BACKGROUND

In October 2002, Bolton began her employment with the United States

Department of Justice as an Assistant United States Attorney in the United States

Attorney's Office for the Eastern District of Washington ("Eastern District").

(Doc. 1 at ¶ 4.1.) Bolton was promoted to the supervisory position of Deputy

Criminal Chief in April 2012. (*Id.* at ¶ 4.13.) She alleges she became "the target

of a pattern and array of disparate treatment from male subordinates," which was

"encouraged and ratified" by her male supervisors, and that she was subjected to a

variety of "management actions" that amounted to less favorable treatment on the

basis of her gender. (*Id.* at ¶¶ 4.18, 4.19, 4.26.) She alleges the pattern of less

favorable treatment included disparity of compensation. (*Id.* at ¶ 4.24.) After

inquiring into pay discrepancies in her office, Bolton filed a Freedom of

Information Act ("FOIA") request in June 2011. (*Id.* at ¶¶ 4.31, 4.34.) She

received a response to her request on May 16, 2014, which she alleges "failed to

disclose the information needed to assess comparisons." (*Id.* at ¶ 4.36.) In an

examination with Equal Opportunity investigators, however, Bolton indicated she

was able to decipher the identity of "a few individuals" in her review of the FOIA

response she was provided by the Eastern District Freedom of Information staff.

(BOL-DOJ-009324.)[1]

On February 21, 2014, Bolton filed a pre-complaint of discrimination with

---

[1] Cites to the administrative record provided by Lynch. Pages in that record are numbered "BOL-DOJ-[Bates Number]."

the Equal Employment Opportunity and Diversity Management Staff ("Equal

Employment Office") for the Eastern District. (BOL-DOJ-009137-9139.) Her

pre-complaint alleged her supervisory authority over male Assistant U.S.

Attorneys had been undermined. *Id.* A supplemental memorandum Bolton

supplied to the Equal Employment Office four days later included a concern that

one of her male subordinates received a 40- hour time-off award while a female

Assistant U.S. Attorney only received an 8-hour time off award. (BOL-DOJ-

009156.)

On June 2, 2014, Bolton filed a formal complaint of discrimination with the

Equal Employment Office. (BOL-DOJ-008826.) The complaint form required a

description of the actions Bolton was challenging as discriminatory, and she

provided the following:

> Managerial and supervisory assignments and personnel were
> removed from my supervision and delegated to and/or assumed
> by a male colleague based on my gender (female). A hostile work
> environment has resulted wherein certain male colleagues have
> engaged in persistent and ongoing offensive treatment towards
> me resulting in/from discriminatory treatment of me based on my
> status as a female supervisor.

*Id.* In a supplemental memorandum to her formal complaint, Bolton elaborated on

the alleged discriminatory treatment. (BOL-DOJ-008827-008844.) Her

memorandum describes a "good old boys" club at the Eastern District,

membership in which was limited to "a core group of male AUSAs and managers" including "managers that [were] involved in employment decisions including hiring, pay, and other employment benefits including access to resources and bonuses and time off awards." (*Id.* at 008828.) The memorandum alleges this "good old boys" club contained no women, and "afforded benefits and privileges of employment not available to attorneys who [were] not part of [the] group and therefore never afforded to women." (*Id.* at 008830.) Such benefits included "the pay and bonuses and the delegation of office resources and approvals that [were] given to AUSAs in the 'club' versus those afforded to other attorneys not in the 'club.'" *Id.*

On August 7 and 18, 2014, Bolton submitted amendments to her formal Equal Employment Opportunity complaint based on a theory of retaliation. (*Id.* at 009049-9056.) In the amendments, Bolton stated she had "shared information [she] received through her 2011 FOIA request relating to pay and bonuses for attorneys in the office with female colleagues [she] believe[d] were denied equal pay for equal work." (*Id.* at 009049.) She also alleged that her $2,000 Performance Payment for 2013 was $500 less than the bonuses awarded to fellow Deputy Criminal Chief Russel Smoot and Criminal Division Chief Aine Ahmed. (*Id.* at 009052; Doc. 43 at 4.)

On September 24, 2014, the Equal Employment Office Staff accepted

Bolton's formal complaint for investigation, identifying six issues for

investigation:

    a.    The removal of male Assistant United States Attorneys from Bolton's team between January and February 2014;

    b.    The delayed issuance of a press release on April 23, 2014, concerning a major trial victory for Bolton;

    c.    The announcement of the permanent hiring of a female Special Assistant United States Attorney in April 2014, without informing Bolton;

    d.    The amount of Bolton's June 2014 bonus as compared to the bonus her male colleagues received;

    e.    The July 3, 2013 reprimand Bolton received for her conduct at a meeting; and

    f.    Bolton's July 31, 2014 placement on administrative leave

(*Id.* at 009073.) Bolton filed a statement amending issue "f" to include that she

had been placed on indefinite suspension without pay. (*Id.* at 009078-9089.) In

November 2014, she filed additions to her formal complaint, this time to

incorporate her indefinite suspension from employment after she accessed the disc.

(*Id.* at 009102-9104, 009132-9134.) Bolton resigned on October 15, 2015. (Doc.

1 at ¶ 4.50.)

      She filed this action on October 21, 2015. (Doc. 1.) She alleges that

Assistant U.S. Attorney Ahmed received significantly more sizable salary

increases between 2009 and 2011 than she did. (*Id.* at ¶ 4.27.2.) She also alleges

she received lesser bonuses than "similarly situated male attorneys" and "male colleagues." (*Id.* at ¶¶ 4.26.2, 4.27, 4.28, 4.29.) Those colleagues included Assistant U.S. Attorneys Ahmed, Smoot, Durkin, and Kimball. (*Id.* at ¶¶ 4.28, 4.29.)

On August 1, 2016, this Court dismissed for lack of subject matter jurisdiction Bolton's Title VII claims arising from the circumstances surrounding and the actions taken by the government in response to the disc-related security breach. (Doc. 30 at 15.) On August 11, 2016, Bolton filed a notice of appeal from the August 1, 2016, order, (Doc. 37), and on August 18, 2016, she filed a motion to stay, (Doc. 41). Also on August 18, 2016, Lynch filed a motion to dismiss. (Doc. 43). On August 23, 2016, Bolton filed a motion to continue. (Doc. 47.) And, on August 29, 2016, Bolton filed a motion for a Rule 54(b) order of finality. (Doc. 53.)

## I.    Rule 54(b) Order of Finality

Bolton moves for a Rule 54(b) order directing entry of final judgment as to her Title VII claims dismissed for lack of subject matter jurisdiction by this Court's August 1, 2016, Order (the "Order") (Doc. 30). (Doc. 53 at 1-2.) Bolton moves in the alternative to amend judgment under Rule 59(e) and Rule 60(b)(2), asking this Court to amend the Order to an order of finality. (Doc. 53 at 2.)

Bolton's motions are denied.

### A.      Rule 54(b) Standard

Rule 54(b) provides that "when an action presents more than one claim for

relief . . . the court may direct entry of final judgment as to one or more, but fewer

than all, claims . . . only if the court expressly determines that there is no just

reason for delay."  In evaluating a Rule 54(b) motion, "[a] district court must first

determine that it is dealing with a 'final judgment.'  It must be a 'judgment' in the

sense that it is a decision upon a cognizable claim for relief, and it must be 'final'

in the sense that it is 'an ultimate disposition of an individual claim entered in the

course of a multiple claims action.'"  *Curtiss-Wright Corp. v. General Elec. Co.*,

446 U.S. 1, 6 (1981) (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436

(1956)).  "It is left to the sound discretion of the district court to determine the

appropriate time when each final decision in a multiple claims action is ready for

appeal." *Id.* at 8 (internal quotation marks omitted).

If a district court determines its judgment is final, it must then decide

whether there are any just reasons to delay an appeal.  "'This discretion is to be

exercised in the interest of sound judicial administration,' and the district court

should take pains to 'assure that application of the Rule effectively preserves the

historic federal policy against piecemeal appeals.'" *Energy Investments, Inc. v.*

*Greehey & Company, Ltd.*, __ F.Supp.3d __ , 2016 WL 475176, at *1 (D. Mont. 2016) (unpublished) (quoting *Curtiss-Wright*, 446 U.S. at 7). "Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Id.*(internal quotation marks omitted). "Whether a final decision on a claim is ready for appeal is a different inquiry from the equities involved, for consideration of judicial administrative interests is necessary to assure that application of the Rule effectively preserves the historic federal policy against piecemeal appeal." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (citing *Curtiss-Wright*, 446 U.S. at 8) (internal quotations omitted). To avoid piecemeal appeal, a district court should be reluctant to grant Rule 54(b) certification in cases where dismissed and viable claims are interrelated. *Id.*

### 1. Finality

A final order is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright*, 446 U.S. at 7. Here, the Court's dismissal of Bolton's security-breach related claims is final as to those claims. The Order dismisses with prejudice "Bolton's disparate discipline claim under Count 1 and her retaliation claim under Count 2 that arise out of the circumstances surrounding and the actions taken by the Agency in response to the disc-related security." (Doc. 30 at 15.) Those claims do not constitute the whole

of Bolton's suit, and they are chronologically separable from the claims that
remain.  Thus the first 54(b) requirement is met.

### 2.    Just Reason for Delay

In determining whether granting a Rule 54(b) motion would contravene "the
historic federal policy against piecemeal appeals," courts must evaluate both the
interests of efficient judicial administration and the equities of both parties.
*Curtiss-Wright*, 446 U.S. at 8-9.  In doing so, "such factors as whether the claims
under review were separable from the others remaining to be adjudicated and
whether the nature of the claims already determined was such that no appellate
court would have to decide the same issues more than once even if there were
subsequent appeals" may be considered.  *Id.* at 9.  "A similarity of legal or factual
issues will weigh heavily against entry of judgment under the rule, and in such
cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and
unjust result, documented by further and specific findings."  *Morrison-Knudsen
Co., Inc. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981).

Here, an appellate court would likely need to address "legal or factual issues
. . . similar to those contained in the claims still pending before the trial court" if a
Rule 54(b) certification were to be granted.  *Morrison-Knudsen*, 655 F.2d at 965.
Bolton's remaining claims have the same legal basis as her dismissed ones:  sex

discrimination and retaliation under Title VII and the Equal Pay Act.  The

appellate court would also need to examine the circumstances surrounding

Bolton's procurement of the disc, and the resulting security breach.  The fact that

Bolton argues the lack of subject matter jurisdiction transforms her claims into

distinct constitutional issues, (Doc. 53 at 13), does not change the appellate court's

task in evaluating the facts giving rise to those claims, however styled.  The

interest of judicial efficiency is therefore a "just reason" for delay under Rule

54(b).

As to the equities, Bolton argues discovery difficulties are impeding her

ability to present her case.  (Doc. 53 at 6.)  This Court's order on that matter, (*see*

Doc. 70), allows Bolton to conduct discovery related to her remaining claims.

### B.    Collateral Order Doctrine

Bolton also relies on the "collateral order doctrine" to support her 54(b)

motion.  The collateral order doctrine relates to the appellate court's exercise of

jurisdiction, which is discussed below in the context of Bolton's motion to stay.

### C.    Amendment of Judgment

Bolton seeks to amend judgment under Rule 59(e) and Rule 60(b)(2).  (Doc.

53 at 18.)  She presents no independent argument for her request, and for the

reasons discussed above, that request is denied.

## II.   Motion for Stay

Bolton also seeks an order staying trial court proceedings until her request

for Ninth Circuit review can be determined.  (Doc. 41.)  Her request is denied.

### A.   Legal Standard

"The courts of appeals . . . shall have jurisdiction of appeals from all final

decisions of the district courts of the United States."  28 U.S.C. § 1291.  A final

decision is one "by which the district disassociates itself from a case."  *Swint*, 514

U.S. at 42.  It "ends the litigation on the merits and leaves nothing for the court to

do but execute the judgment."  *Disabled Rights Action Comm. v. Las Vegas*

*Events, Inc.*, 375 F.3d 861, 870 (9th Cir. 2004).  "The effect of [§ 1291] is to

disallow appeal from any decision which is tentative, informal or incomplete."

*Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 546 (1949).  "Nor does the

statute permit appeals, even from fully consummated decisions, where they are but

steps towards final judgment in which they will merge.  The purpose is to combine

in one review all stages of the proceeding that effectively may be reviewed and

corrected if and when the final judgment results."  *Id.*

### B.   Bolton's Notice of Appeal

Bolton argues the August 1, 2016, Order is a "final decision" conferring

jurisdiction over the dismissed claims on the appellate court and divesting this

Court of jurisdiction to proceed with trial.  (Doc. 41 at 3.)

"The federal courts of appeals are empowered to hear 'appeals from all final decisions of the district courts.'" *Disabled Rights Action Comm.,* 375 F.3d at 869-70 (quoting 28 U.S.C. § 1291). "A decision is 'final' within the meaning of § 1291 if it '(1) is a full adjudication of the issues, and (2) clearly evidences the judge's intention that it be the court's final act in the matter.'" *Id.* at 870 (quoting *Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 433 (9th Cir. 1997)). Orders granting motions to dismiss are "not necessarily immediately appealable." *Id.* In contrast to Rule 54(b) finality, which is a discretionary designation of the district court, finality under § 1291 is a jurisdictional requirement of the appellate court.

Here, the Order was neither a "full adjudication of the issues" nor clear evidence of this Court's intention that it be its final act in the matter. First, all of Bolton's claims which predate the disc-related security breach are still alive. Thus it does not adjudicate all of the issues, but instead only a portion of them. Second, the Order does not grant Rule 54(b) certification so as to make it appealable. Nor does it contain any language indicating it is intended to be this Court's "final act in the matter." Again, it dismisses with prejudice some, but not all, of Bolton's claims. This Court's continuing acceptance of motions and its scheduling of a

hearing for those motion on September 27 indicate it intends to continue to adjudicate the case.

"[I]mproper or ineffective notices of appeal (e.g., untimely notices, appeals from nonappealable orders, or notices filed during pendency of a tolling motion) will not divest the district court of jurisdiction," *Estate of Conners by Meredith v. O'Connor*, 6 F.3d 656, 659 (9th Cir. 1993), and may be disregarded as a district court proceeds with a case, *Ruby v. Sec. of Navy*, 365 F.2d 385, 389 (9th Cir. 1966.)   That is the case here.  Even were Bolton's appeal proper, absent a stay order an interlocutory appeal does not prevent this Court from moving forward with the rest of the case not encompassed by the appeal.  ("[A]n appeal from an interlocutory order does not stay the proceedings, as it is firmly established that an appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case." *Plotkin v. Pacific Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982)).

### C.    Collateral Order Doctrine

Bolton argues the Order is final and appealable under the collateral order doctrine.  The collateral order doctrine relates not to a district court's power to certify an order as final under Rule 54(b), but rather to the appellate court's jurisdiction as provided in 28 U.S.C. § 1291.  The "collateral order doctrine" is a

"'practical construction' of the final decision rule," permitting appeals from "'a small category of decisions that, although they do not end the litigation, must nonetheless be considered final.'" *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1338 (11th Cir. 2007) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)). The collateral order doctrine applies to orders that (1) are conclusive, (2) resolve an important issue completely separate from the merits of the action, and (3) are effectively unreviewable on appeal from final judgment. *Swint*, 514 U.S. at 42.

Bolton supports her collateral order argument by analogizing to the *Feres* doctrine. *Feres v. United States*, 340 U.S. 135, 146 (1950), held that the government is immune from claims brought by soldiers for their service-related injuries, despite the waiver of sovereign immunity contained in the Federal Tort Claims Act. Bolton asserts that, just as an order denying *Feres* immunity can allow an appellate court to take jurisdiction, so too should does the order at issue here confer appellate jurisdiction. (Doc. 53 at 12 (citing *McMahon*, 502 F.3d at 1341).) *McMahon* concerned the collateral order doctrine and derivative sovereign immunity of an air service company which had provided flight services for the United States Army in Afghanistan. *McMahon*, 502 F.3d at 1336. It did not concern a Rule 54(b) evaluation of finality (nor does the opinion mention Rule

-14-

54(b)).  As discussed, the dismissed claims here are arguably final under the Rule

54(b) standard; however, the Order does not "resolve an important issue

completely separate from the merits of the action" as Bolton still has claims based

in the same underlying facts and legal theories.  Further, the Order is not

"effectively unreviewable on appeal from final judgment."  Instead, it is best

viewed as part and parcel of Bolton's suit.

### D.   Discretionary Stay

Bolton argues this Court should stay the action in the interests of justice.

(Doc. 41 at 8.)  She argues resolution of the jurisdictional question on appeal will

affect the underlying claims in the case, and that proceeding with the case will

prevent proper relief on her remaining claims, because of the impact of dismissal

on discovery and admissibility.  (*Id.* at 10.)

"The power to stay proceedings is incidental to the power inherent in every

court to control the disposition of the causes on its docket with economy of time

and effort for itself, for counsel, and for litigants.  How this can best be done calls

for the exercise of judgment, which must weigh competing interests and maintain

an even balance."  *Landis v. N. Am. Co.*, 299 U.S. 248, 264-55 (1936).

Here, the economy of time and effort for this Court and for the government

favors proceeding with the action.  Bolton's concern's regarding discovery have

been addressed, (Doc. 70), and the case shall proceed as scheduled.

## III.   Motion to Dismiss

Lynch moves to partially dismiss Bolton's claims.  (Doc. 43.)  Lynch argues

Bolton's claims under the Equal Pay Act should be limited to claims accruing after

October 21, 2012 because her earlier claims are time-barred and should be

dismissed.  (Doc. 43 at 8.)  She argues Bolton's claims under Title VII should be

limited to her 2013 Performance Payment because Bolton did not raise any of her

other Title VII pay claims at the administrative level, did not meet the regulatory

requirement that federal employees initiate contact with an Equal Employment

Office counselor within 45 days of an allegedly discriminatory act, and, even if

Bolton had timely raised the full scope of her current pay claims during the

administrative process, would still be subject to Title VII's two-year limitations on

back pay recovery.  (Doc. 43 at 10, 13,15-16.)  Lynch's motion is denied.

### A.   Legal Standards

Lynch moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted, and under Rule 12(b)(1)

for lack of subject matter jurisdiction.

A court may dismiss a complaint under Rule 12(b)(6) when it does not

contain enough facts to state a claim to relief that is plausible on its face.  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ ,129 S. Ct. 1937, 1949 (2009). In considering a motion to dismiss, a court must generally accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 550.

Rule 12(b)(1) permits defendants to move for dismissal of a complaint for lack of subject-matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* When a defendant mounts a facial attack, such as here, the court must "accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

### B.      Equal Pay Act Claims

-17-

Lynch argues that Bolton is time-barred under the Equal Pay Act from challenging her compensation before October 21, 2012, and that her Equal Pay Act claims predating that time should be dismissed.

The Equal Pay Act is codified within the Fair Labor Standards Act at 29 U.S.C. § 206(d), and takes its statute of limitations from that law.  A suit under the Equal Pay Act must be filed within two years after the cause of action accrues, or within three years of accrual if the alleged violation was "willful."  29 U.S.C. § 255(a).  "Each discriminatory paycheck [an employee] receive[s] constitutes a separate violation of the [Equal Pay Act] with a cause of action accruing (and the running of the limitations period commencing) upon receipt of the discriminatory paycheck."  *O'Donnell v. Vencor, Inc.*, 406 F.3d 1104, 1113 (9th Cir. 2006). Although Equal Pay Act violations can be continuing, "the continuing violation doctrine does not permit [a plaintiff] to recover back pay for discriminatory pay periods outside the applicable statute of limitations period."  *Id.*

Here, Bolton filed her complaint on October 21, 2015.  (Doc. 1.)  Applying the statute of limitations, and assuming the violations of the Equal Pay Act she alleges were willful, her claims under that act can extend only to October 21, 2012.  Bolton argues, however, that the "federal discovery rule" should apply to toll the statute of limitations on her Equal Pay Act claims.  (Doc. 61 at 8.)  She

insists that, because Lynch has refused discovery relating to "any of Bolton's claims," the statute of limitations on those claims has not begun to run. (*Id.* at 9-10.) Bolton also argues the statute of limitations should be tolled because the government demonstrated bad faith in failing to comply with her FOIA request and continues to demonstrate bad faith in discovery. (Doc. 61 at 10.)

"[I]n general, the discovery rule applies to statutes of limitations in federal litigation, that is, '[f]ederal law determines when the limitations period begins to run, and the general federal rule is that 'a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) (quoting *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir. 1998)). "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control ma[k]e it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). It is appropriate in situations "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Bolton raises legitimate concerns about the conduct of male attorneys and

managers at the Eastern District relating to Bolton's request for attorney pay

information.  She also raises legitimate concerns about the inexcusably lengthy

delay she faced after filing her FOIA request.  (Doc. 61 at 10-16.)  In light of these

concerns, and because on-going discovery may uncover facts pertinent to the

issues of discovery, tolling, and estoppel, dismissal of Bolton's Equal Pay Acts is

inappropriate at this stage.

### C.    Title VII Claims

#### 1.    Administrative Exhaustion

Lynch argues that, because Bolton did not administratively exhaust her pay

claims under Title VII, those claims may not be considered by this Court.  (Doc.

43 at 10.)  She further argues that because Bolton challenged only her 2013

Performance Payment of $2,000 during the administrative stage, that claim is the

only one properly in consideration here.  *Id.*  Lynch is incorrect.

"In order to litigate a Title VII claim in federal district court, [a plaintiff]

must have exhausted her administrative remedies, including regulatory and

judicially imposed exhaustion requirements." *Greenlaw v. Garrett*, 59 F.3d 994,

997 (9th Cir. 1995) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832

(1976)).  These regulatory requirements include consulting with an Equal

Opportunity Counselor "within 45 days of the date of the matter alleged to be

discriminatory." 29 C.F.R. § 1614.105(a)(1). If the matter is not resolved, the

complainant has "the right to file a discrimination complaint within 15 days of

receipt of notice" that informal counseling has ended. *Id.* at § 1614.105(d).

"To establish federal subject matter jurisdiction, [a complainant] is required

to exhaust her [Equal Employment Opportunity Commission] administrative

remedies before seeking federal adjudication of her claims." *E.E.O.C. v. Farmer*

*Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). The jurisdictional scope of a Title VII

claimant's court action depends upon the scope of both the [Equal Opportunity

Commission] charge and the [Equal Opportunity Commission] investigation." *Id.*

Claims not included in a plaintiff's administrative complaint "generally may not

be considered by a federal court." *Freeman v. Oakland Unified Sch. Dist.*, 291

F.3d 632, 636 (9th Cir. 2002). However, "[t]he district court has jurisdiction over

any charges of discrimination that are like or reasonably related to the allegations

in the [Equal Employment Opportunity Commission] charge, or that fall within the

[Equal Employment Opportunity Commission] investigation which can reasonably

be expected to grow out of the charge of discrimination." *Sommatino v. United*

*States*, 255 F.3d 704, 709 (2001) (quotations omitted) (citing *Deppe v. United*

*Airlines*, 217 F.3d 1262, 1267 (9th Cir. 2000)). "The crucial element of a charge

of discrimination is the factual statement contained therein." *B.K.B. v. Maui*

*Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (citation and alteration

omitted). Further:

> [i]n determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred. In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case. *Id.*

*Id.*

Here, Bolton's "administrative charge" included descriptions of a "good old

boys" club which contained no women and which "afforded benefits" such as "pay

and bonuses and the delegation of office resources and approvals . . . given to

AUSAs in the 'club' versus those afforded to other attorneys not in the 'club.'"

(BOL-DOJ-008830.)  Meanwhile, Count 1 of Bolton's complaint (entitled "Title

VII Disparate Treatment") alleges she was "subjected to less favorable, disparate

treatment in the terms, conditions, and privileges of her employment on the basis

of her gender, including . . . disparate pay and bonuses." (Doc. 1 at ¶ 5.1.)  Bolton

is a woman.  It therefore seems likely that a disparate pay claim could have been

expected to "grow out of" her initial charge of discrimination.

In addition, although redaction makes it difficult to know to which male

attorneys at the Eastern District Bolton refers in her administrative charge, she

does mention the names of a number of male attorneys at the Eastern District in

her administrative complaint, including a comparison between a redacted male

attorney being maxed out on the salary schedule in a short period of time while

"highly qualified" female attorneys took longer.  (BOL-DOJ-008830.)  Again, this

indicates the likelihood of a disparate pay claim growing out of her initial

discrimination charge.

In sum, Lynch's argument that Bolton did not raise her claims at the

administrative stage is undercut by the record of Bolton's administrative

complaint.  Dismissal of Bolton's Title VII claims on the grounds of failure to

exhaust is inappropriate.

## 2.    Title VII 45-Day Time Bar and Two-Year Limitation on Recovery

Lynch argues that even if Bolton's Title VII claims other than her 2013

Performance Payment were administratively exhausted, they are nevertheless

barred because she failed to raise them within 45 days of their occurrence.  (Doc.

43 at 13.)  She further argues that Bolton is subject to Title VII's two-year

limitation on back pay recovery.  (Doc. 43 at 15.)

Title VII regulations require federal employees to contact an Equal

Employment Office counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). The regulations extend the 45-day filing period if the plaintiff was not aware of the time limits, should not reasonably have been aware of the discriminatory matter or action, was prevented by circumstances beyond her control from making timely contact, or "for other reasons considered sufficient by the agency or the Commission." *Id.* at §1614.105(a)(2). "Although it does not carry the full weight of statutory authority, failure to comply with this regulation has been held to be fatal to a federal employee's discrimination claim." *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002). Under Title VII, an unlawful employment practice occurs "each time wages, benefits, or other compensation is paid" as a result of a discriminatory pay decision or practice. 42 U.S.C. § 2000e-5(e)(3)(A). However, "[b]ack pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission." *Id.*

Here, Bolton sought Equal Employment Office counseling on February 21, 2014, (BOL-DOJ-009137-9139), meaning the 45-day limit would bar her Title VII claims arising before January 8, 2014. Bolton also filed her administrative pre-complaint on February 21, 2014. *Id.* Her back pay claims would thus be limited to those accruing after February 21, 2012.

Again, Bolton argues equitable tolling and estoppel should save her claims. (Doc. 61 at 10.)  Bolton argues the government has demonstrated bad faith in delaying responses to her FOIA request, refusing discovery demands, and attempting to outrun the statutes of limitations at issue here.  (Doc. 61 at 21). Nearly three years elapsed between Bolton's initial FOIA request (June 2011) and her receipt of a "partial response" (May 2014).  (Doc. 63 at 3, 9; Doc. 1 at ¶ 4.34.) These circumstances are again compelling, and should be left for the jury to evaluate, as should the question of when Bolton had sufficient knowledge to file her complaint.

## CONCLUSION

Accordingly, IT IS ORDERED Plaintiff's Motion for Rule 54(b) Order of Finality (Doc. 53) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Stay (Doc. 41) is DENIED and Plaintiff's Motion to Continue (Doc. 47) is DENIED as MOOT.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (Doc. 43) is DENIED.

DATED this ___ day of September, 2016.

Donald W. Molloy, District Judge
United States District Court

-25-